**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MEDPOINTE HEALTHCARE, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MD WALTER E. KOZACHUK,**<br><br>**Defendant.** | **Civil Action No. 04-2019 (MLC)**<br><br>**REPORT & RECOMMENDATION** |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon the Motion of Plaintiff MedPointe Healthcare, Inc. ("MedPointe") for an Order enforcing settlement against Defendant Dr. Walter E. Kozachuk ("Dr. Kozachuk"). The Court held a hearing on this Motion on January 29, 2009 and has fully considered the parties' arguments as set forth at that hearing and in their papers. For the reasons set forth below, the Court recommends that MedPointe's Motion be granted.

## I. Background

Dr. Kozachuk is the record owner of all rights, title and interest in the following three patents, all of which relate to the medical use of felbamate: U.S. Patent No. 5,728,728 (the "'728 patent"), U.S. Patent No. 5,942,540 (the "'540 patent") and U.S. Patent No. 6,515,019 (the "'019 patent"). On April 28, 2004, MedPointe initiated this case against Dr. Kozachuk claiming that Dr. Kozachuk is not the true inventor or at least not the sole inventor of the '728, '540 and '019 patents. (*See generally*, Pl. Compl. and Amended Compl.) Dr. Kozachuk denied MedPointe's allegations and this litigation proceeded. (*See generally* Def. Answer). A trial date was set in this matter for May 19, 2008.

Prior to the start of trial, on May 14, 2008, the undersigned conducted a settlement

conference with counsel and both parties in this matter. The settlement conference lasted approximately four hours. At the end of the conference, the parties had agreed to settle the matter. In order to memorialize the settlement reached by MedPointe and Dr. Kozachuk, the Court had counsel and the parties place the terms of their settlement on the record. (*See generally*, May 14, 2008 Settlement Tr.) Given the settlement reached in this matter, on May 15, 2008, the Court dismissed MedPointe's Complaint and gave the parties sixty days to reduce their settlement agreement to writing and, if desired, to file an additional stipulation of dismissal with the Court. (*See* Hon. Mary L. Cooper's 5/15/08 Order).

On June 16, 2008, counsel for MedPointe provided counsel for Dr. Kozachuk with a draft Settlement Agreement and Release and a draft Assignment (collectively, the "Settlement Documents"). (*See* October 29, 2008 Brown Aff. at ¶8). Because the Settlement Documents were not executed by July 14, 2008, the Court extended the previously entered 60-day Order until August 13, 2008. (Hon. Mary L. Cooper's 7/14/08 Order). The Court subsequently extended the parties' deadline for reducing their agreement to writing a second time on August 13, 2008, giving them until August 28, 2008 to consummate the written agreement. (Hon. Tonianne J. Bongiovanni's 8/13/08 Order).

Between August 7, 2008 and August 27, 2008 counsel for both parties' communicated in an effort to finalize the written settlement agreement and MedPointe sent revised Settlement Documents to Dr. Kozachuk's counsel. (*See* October 29, 2008 Brown Aff. at ¶¶ 10-13). However, on August 27, 2008, counsel for Dr. Kozachuk informed counsel for MedPointe that he was unable to obtain his client's signature on the revised Settlement Documents. (*Id.* at ¶13). Counsel for Dr. Kozachuk also indicated that he would be filing a motion to withdraw as

counsel, which he did later that day. On September 3, 2008, the Court conducted a telephone conference regarding the status of the settlement of this matter. During the telephone conference, the Court extended the 60-day Order a third time until November 1, 2008 and instructed counsel for Dr. Kozachuk to inform Dr. Kozachuk that if he fails to execute the Settlement Documents and if the Court finds that in light of the settlement reached on May 14, 2008 his failure to do so is unwarranted, sanctions may be imposed against him. (Hon. Tonianne J. Bongiovanni's 9/4/08 Order). The Court also required Dr. Kozachuk to obtain a copy of the transcript of the May 14, 2008 settlement proceedings and to furnish a copy of that transcript to MedPointe. (*Id.*)

On October 29, 2008, having not received executed Settlement Documents from Dr. Kozachuk, MedPointe filed the instant Motion seeking to enforce settlement and for sanctions. Dr. Kozachuk opposes MedPointe's Motion. The parties' arguments are set forth in detail in their papers and were heard by this Court during the January 29, 2009 hearing. As a result, the Court shall not restate them at length herein.

To summarize, MedPointe seeks to enforce the settlement reached and placed on the record during the May 14, 2008 settlement conference. MedPointe argues that an enforceable agreement was reached on May 14, 2008 and the fact that the agreement was never reduced to writing is irrelevant. Specifically, MedPointe argues that the essential terms of the settlement, which follow, were agreed upon by the parties at the May 14, 2008 conference: (1) MedPointe will pay $60,000 to Dr. Kozachuk; (2) Dr. Kozachuk will transfer all right, title and interest in the three United States patents in suit, namely the '728, '540 and '019 patents, to MedPointe or its successor; (3) MedPointe will review Dr. Kozachuk's pending United States patent application regarding felbamate to determine whether in MedPointe's view all or part of the

application triggers Dr. Kozachuk's obligations under his agreement with Carter Wallace. If MedPointe thinks that all or part of it does, counsel for MedPointe and Dr. Kozachuk will confer in an effort to reach an agreement on a proper course of action and if an agreement cannot be reached the parties will arbitrate the dispute to determine whether Dr. Kozachuk's patent application or patent, if issued, needs to be transferred to MedPointe's successor, understanding that the arbitration may only bear on part of Dr. Kozachuk's application; and (4) the settlement is without prejudice to MedPointe or its successor's rights with respect to any foreign patents or patent applications for foreign patents obtained by Dr. Kozachuk that relate to felbamate. MedPointe also argues that because Dr. Kozachuk has no basis for failing to sign the Settlement Documents as revised on August 12, 2008, Dr. Kozachuk should be sanctioned and MedPointe awarded the fees and costs it has occurred since August 12, 2008. In this regard, MedPointe suggests that the Court set off $9,842.78 from the $60,000 due to Dr. Kozachuk according to the settlement.

As previously stated, Dr. Kozachuk opposes MedPointe's Motion to enforce settlement. Dr. Kozachuk argues that he did not understand the May 14, 2008 proceedings and that he "had no conception that the 'offer' being discussed was accepted by him[.]" (Dr. Kozachuk's Br. at 1). Dr. Kozachuk claims that he had no idea that he was foregoing his right to try this matter. Dr. Kozachuk alleges that on May 3, 2008 he told his counsel to not even respond to an offer that was nearly identical to that put forward at the May 18, 2008 hearing (it called for a payment of $40,000 instead of $60,000). Dr. Kozachuk further argues that also relevant is the fact that after he informed his counsel not to counter MedPointe's settlement offer and to prepare to go to trial, on May 5, 2008, only nine days prior to the Court's settlement conference and fourteen days

before the trial of this patent litigation was slated to begin, his attorney attempted to coerce him into settling this matter by threatening to withdraw as counsel.

In addition, Dr. Kozachuk claims that it is clear that he did not intend to settle this matter because a number of triable issues remained in the case. Further, he argues that his lack of intent to settle is evident by the fact that MedPointe's offer "constituted an unfathomable capitulation" given the fact that Dr. Kozachuk believed and continues to believe that he has "an excellent chance to prevail at trial." (*Id*. at 4-5). Dr. Kozachuk argues that it is "unthinkable that he understood that he was turning over his three patents to an employer of a decade ago for $60,000: no license, no royalty, indeed no compromise at all." (*Id*. at 27). Indeed, he states that it is plain that he did not understand the settlement or intend to settle because the alleged settlement would mean he had agreed "to walk away from his three multi-million-dollar patents for a mere $60,000.00 (far less than even the cost of obtaining the patents)." (*Id*. at 6). Moreover, the alleged settlement would mean he had agreed "to turn over *four*" patents when he had only been sued on three. (*Id*. at 27 (Emphasis in original). Dr. Kozachuk also argues that his actions following the purported settlement show that he never intended to settle this matter. Further, Dr. Kozachuk claims that the May 14, 2008 proceedings lacked any *voir dire* by the Court or his counsel to ensure that he understood the settlement to which he purportedly agreed.

## II. DISCUSSION

A settlement agreement is a type of contract. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)). Consequently, courts look to state contract law when determining whether an enforceable settlement agreement has been reached. *See Id*.

In New Jersey, there is a strong public policy favoring settlements. *Nolan v. Lee Ho.*, 120 N.J. 465, 472 (1990). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985). Nevertheless, courts will not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955)). However, "a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.* (internal quotation marks and citation omitted).

Moreover, under New Jersey law, as long as "the parties orally agree on the essential terms," a contract is formed. *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, *3 (D.N.J. Sept. 24, 2007). This is true "'even though [the parties] contemplate the later execution of a formal document to memorialize their undertaking.'" *Id.* (quoting *United States v. Lightman,* 988 F.Supp. 448, 459 (D.N.J. 1997). As a result, "as long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993).

Under these principles, the Court finds that an enforceable settlement was reached on May 14, 2008. While Dr. Kozachuk argues that he did not understand the May 14, 2008 proceeding and did not intend to settle this matter, the Court finds Dr. Kozachuk's arguments in

this regard to lack credibility. While not an attorney, Dr. Kozachuk is a well educated and sophisticated individual who is not entirely unfamiliar with the litigation process. Dr. Kozachuk was in Court for approximately four hours on May 14, 2008, while the undersigned worked with counsel and the parties in an effort to settle this matter. At the end of four hours, counsel reported that the parties had agreed to settle the matter. The Court then placed the parties' settlement on the Record. In so doing, the Court made clear the purpose of the day's proceedings:

> THE COURT: Okay. I understand we've been participating in settlement discussions. It's nearly seven o'clock. You gentlemen and ladies have been here since 2:30 and it appears that we have terms that we'd like to place on the record.

(May 14, 2008 Settlement Tr. at 3:10-14). The Court then set forth how the terms of the parties' settlement would be placed on the Record:

> THE COURT: So, Mr. Brown, as plaintiff, I would ask you to do that [place the terms of the settlement on the Record]. And then, Ms. French, I would ask you if you concur in the terms. And then I would turn to you, Mr. Posillico, likewise ask you if -- make sure we have all our bases covered and then ask Dr. Kozachuk if he agrees as well.

(*Id*. at 3:15-20). As the Record indicates, counsel and the parties then placed the terms of the settlement on the record in accordance with the procedure outlined above.

> MR. BROWN: All right. Your Honor, we've -- we've agreed to the -- the settlement and principle on the following terms: MedPointe will pay to Dr. Kozachuk $60,000. Dr. Kozachuk will transfer all right, title and interest in the three U.S. patents at suit -- in suit in this case to -- MedPointe or its -- its successor . . . . We -- we --that is MedPointe will review a pending Felamate (phonetic) application of Dr. Kozachuk's to determine whether in our view it triggers his obligations under his agreement with Carter Wallace. If it does, I will -- I will speak with Mr. Posillico. And if

we cannot reach agreement on a proper course of action in light of our view that it triggers his obligation, the parties will agree to arbitrate that dispute. And we will -- I will work with Mr. Posillico in selecting a mutually acceptable arbitrator.

Dr. Kozachuk has represented that that application that I just referred to is his only U.S. patent application involving Felamate. This settlement is without prejudice to MedPointe's or Meda Pharmaceutical's rights with respect to any foreign patents or patent applications for foreign patents obtained by Dr. Kozachuk or pending foreign applications by Dr. Kozachuk relating to Felamate. The parties will execute releases that are consistent with the foregoing terms. And Mr. Posillico and I will -- will reduce these terms, as well as any other -- other terms, ancillary terms in a written settlement agreement.

***

MR. BROWN: Ms. French wanted me to -- to clarify what the -- what the -- what the arbitration decision would be. It would be is if there's a dispute as to whether this patent application triggers Dr. Kozachuk's obligations, the arbitrator would then decide whether the -- whether the application or if it's then a pending patent would need to be transferred to -- to Meda under the terms of the agreement.

THE COURT: Okay.

MS. FRENCH: Yes.

THE COURT: Ms. French?

MS. FRENCH: That -- that I agree with.

THE COURT: Okay. And all of the other terms as well?

MS. FRENCH: Yes.

THE COURT: Okay. Mr. Posillico, do you have anything that you want to clarify and do you agree to the terms as outlined?

MR. POSILLICO: I -- I agree. The only thing I would add, just by way of clarification -- I think this is a relatively minor point -- is the arbitration would be directed potentially at least to part of the

> patent application. In other words, it's not all or none. There may be certain claims that MedPointe believes are subject to the agreement and other claims that are not. So the arbitration may be some -- some sub portion of the patent application. With that understanding, otherwise, I'm in full agreement.
>
> MR. BROWN: Yeah. Yeah. We agree that it -- you know, obviously pending review of it, it could relate to only some of the plans. We agree with that.
>
> THE COURT: Okay. Dr. Kozachuk, do you agree as well?
>
> DR. KOZACHUK: Yes.
>
> THE COURT: Okay. And I just wanted to specifically note that you were also representing that this is the only U.S. patent that involves Felamate?
>
> DR. KOZACHUK: It is.

(*Id*. at 3:24 - 6:24). While the Court did not engage in an extensive *voir dire* of Dr. Kozachuk, such a *voir dire* is not necessary. Further, the fact that triable issues remained in this case at the time of the settlement conference does not mean that a settlement did not occur.

Taking into account the entire May 14, 2008 settlement conference as well as the entire exchange that took place on the Record, the Court finds that Dr. Kozachuk understood the May 14, 2008 proceeding and intended and in fact agreed to settle this matter for the terms outlined above. Dr. Kozachuk now apparently regrets his decision. That regret, however, is not a reason for this Court to refuse to enforce the settlement reached in this matter. To the contrary, the Court recommends that the settlement reached in this matter be enforced despite the fact that a writing failed to materialize due to Dr. Kozachuk's attempts to renege.

Finally, the Court finds that MedPointe should be awarded its reasonable attorneys fees and costs associated with filing its Motion to enforce settlement and with preparing for and

attending the January 29, 2009 hearing. The Court notes that "[t]he general rule . . ., known as the 'American rule', is that each party to a lawsuit bears its own attorneys' fees." *Ford v. Temple Hosp.*, 790 F.2d 342, 346 (3d Cir. 1986) (citing *Alyseka Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 246-47, 258-59 (1975)). There are, however, exceptions to this rule. For example, a Court may award attorneys' fees to a successful party, where "his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal quotation marks and citations omitted). Further, the Court in its discretion may award attorneys fees and costs pursuant to its inherent powers to impose sanctions on parties to a litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Though, "because of their very potency," the Court must exercise its inherent powers "with restraint" (*Id.*) and "must ensure that there is an adequate factual predicate" for doing so before relying on its inherent authority to impose sanctions. *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

Here, the Court finds that Dr. Kozachuk's refusal to sign the revised Settlement Documents was entirely unjustified as the revised Settlement Documents accurately reflect the essential terms of the settlement reached by the parties. Further, Dr. Kozachuk's behavior unfairly increased MedPointe's cost of litigating this matter. Under these circumstances, the Court finds that the imposition of sanctions is warranted. Consequently, while the Court does not believe that MedPointe should be awarded all of its attorneys fees and costs since August 12, 2008, the Court does find that MedPointe should be awarded the reasonable attorneys fees and costs incurred in drafting and filing the Motion to enforce settlement and in preparing for and attending the January 29, 2009 hearing.

**III. CONCLUSION**

For the reasons set forth above, the Court recommends that MedPointe's Motion to enforce settlement be granted. The Court also recommends that MedPointe be awarded its reasonable attorneys fees and costs associated with filing its Motion to enforce settlement and preparing for and attending the January 29, 2009 hearing.

IT IS therefore on this 3rd day of March, 2009,

RECOMMENDED that MedPointe's Motion to enforce settlement be granted; and it is further

RECOMMENDED that sanctions be imposed against Dr. Kozachuk for the amount of MedPointe's reasonable attorneys fees and costs incurred in drafting and filing its Motion to enforce settlement and in preparing for and attending the January 29, 2009 hearing. If this Report and Recommendation is adopted, MedPointe is instructed to submit its fee petition to this Court within ten days of being served with a copy of the Order and/or Opinion adopting this Report and Recommendation; and it is further

ORDERED that pursuant to L.CIV. R. 72.1(c)(2) and FED. R. CIV. P. 72(b), within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within ten (10) days after being served with a copy thereof; and it is further

ORDERED that the Clerk of the Court mail a copy of this Report and Recommendation to Dr. Kozachuk at 757 Frederick Road, Suite 102, Catonsville, MD 21228.

Respectfully submitted,

s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**